Argued and submitted February 16, reversed and remanded October 12, 1983

In the Matter of the Marriage of
## HENDRICKS,
*Respondent,*
*and*
## HENDRICKS,
*Appellant.*
(78-9-83; CA A24876)
670 P2d 196

Gregory Kafoury, Portland, argued the cause for appellant. With him on the brief was Kafoury & Hagen, Portland.

No appearance for respondent.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

WARDEN, J.

## WARDEN, J.

■ Father appeals the denial of his motion to modify the decree dissolving the marriage of the parties to change the custody of the two minor children of the marriage, a boy born in 1973 and a girl born in 1977, from mother to him. We review *de novo*[1] and reverse.

Father agrees that during the marriage mother was an adequate parent. His concern is with events that have occurred since the dissolution in February, 1979. Mother moved to California soon after the decree, and father apparently was not disturbed about the children's care and custody before March, 1981, when the boy, age seven, accidently shot the girl, then four, with a pistol he had found in a night stand next to mother's bed. The children visited with father the next summer and then returned to mother's home. In December, when father had them again for a Christmas visitation, he obtained an order of temporary custody and began this proceeding.

■ Our first inquiry is whether there has been a change of circumstances since the decree that justifies reopening the custody issue. *Greisamer and Greisamer,* 276 Or 397, 400, 555 P2d 28 (1976). We find that there has been. We do not rely on the shooting incident. It is unlikely to recur, and mother acted properly in getting prompt medical attention for her daughter. We base our decision on the totality of the evidence which establishes that mother's living situation is unstable.

Several witnesses stated that the children, when they came for the Christmas visitation, had an excessive and sophisticated knowledge of and interest in sex and drugs. They talked about sex constantly and discussed how to cut drugs using a mirror and a razor blade. Mother's rebuttal to the evidence of the children's knowledge is weak.[2]

---

[1] On *de novo* review we generally give considerable weight to the trial court's determination of the credibility of the witnesses. In this case the court stated that someone was lying, but it could not determine who it was. A month later, at a hearing on a motion for a stay pending appeal, it expressed skepticism concerning some of father's evidence. We do not read those remarks as credibility findings and must therefore determine credibility solely from the written record before us.

[2] At best, mother's failure to note and deal with the problems reflects poorly on her parenting and on the children's future with her; at worst, it indicates an unhealthy home environment. We need not decide which inference to draw, for either would justify finding a change of circumstances.

Mother remarried less than a year after the dissolution of this marriage but, although still married at the time of the hearing on father's motion, she apparently has lived with her husband for only a short time. For several years she has been living with a man whose occupation requires considerable travel and frequent absences.[3] She has moved frequently, has lived in places where it was difficult for her children to go to school and has not insisted on school attendance. The boy has had a poor school record while he has been with mother. The children evidenced signs of a lack of structure in their lives when they came to Portland. Their table manners were "nonexistent," they did not have regular meal times and they appeared to be used to staying up as late as they liked and sleeping as late as they wished.

Father's home situation, while not perfect, has improved as mother's declined. Although he was laid off from his job soon after the children came to Portland in December, 1981, he was living with a woman who was employed, and both made serious efforts to cope with the children's problems. The deterioration in mother's living situation, the children's unstructured lives with her and the improvement in father's situation together create a changed situation that justifies a new look at custody.

Having found a change of circumstances, we decide whether it is in the best interest of the children to change custody from mother to father. *Greisamer and Greisamer, supra.* We determine that it is. Neither mother nor father is an ideal parent, and each has done things in the past which cast doubt on his or her fitness to be the custodial parent. Mother and the man with whom she was living, however, did not notice the children's problems and possibly contributed to them, while father and his girlfriend noticed and worked to resolve them. Father has a strong support group in his and his girlfriend's relatives, who have helped him deal with the children's problems during and after the Christmas visitation and helped him get counseling for the children and parenting education for himself and his girlfriend.[4] The children have

---

[3] If her testimony of how long they have lived together is accurate, she must have been living with him when she married her present husband.

[4] We give considerable weight to involvement in counseling when, as here, it appears to be the result of a desire to work on problems rather than merely to impress a judge.

improved under father's temporary custody. Their lives have become more structured, their obsessive interest in sex has declined and they have developed regular school attendance. The hearing was held over a year ago, and we do not know what has happened since, other than that the children have been in father's custody pending appeal almost the entire time.[5] On this record it is in their best interest for father to have their custody, and we so order. On remand the court should determine the issues of support and visitation.

Decree modified to change custody of children from mother to father; and remanded for determination of visitation and support. Costs to appellant.

---

[5] We have often recognized that the importance of providing children with stability and continuity in parental figures weighs against changes of custody. *See, e.g., Mackey v. Mackey,* 9 Or App 113, 115, 496 P2d 21 (1972). Father has had actual custody for well over a year, so a change of legal custody to him would not be disruptive. However, we discourage the use of temporary custody orders to build a record for permanent custody.